LORAIN MASON *vs.* LEONARD ALDRICH.

December 22, 1886.

**Liability of Receiptor for Personal Property Levied upon.**—Property levied upon by a sheriff as the property of the defendant in the writ was delivered to a third person, who executed therefor the following:

"ACCOUNTABLE RECEIPT.

"Received of the said [sheriff] the goods and chattels above mentioned, [those levied on,] which I promise to deliver to him at any time he shall demand the same, or, in default thereof, I do hereby agree with him to pay him the amount of the above-mentioned debt [amount called for by the writ] as the same is above specified, together with costs, fees, and interest thereon."

*Held,* that this amounted merely to a contract of bailment for the safe-keeping and return of the property, and that the receiptor might be relieved from liability for the non-delivery of the property by proof that, at the time of the levy, it did not belong to the debtor, but to another person, into whose possession it had since gone; that the last clause of the receipt did not amount to an absolute undertaking to pay the debt, in case of a non-delivery of the property in fact; that the effect of it was merely

to fix the measure of damages, in case of a breach of the contract of bailment; that the "*default*" meant was a breach of legal duty, hence anything which would excuse the receiptor from delivering the property, would exempt him from liability to pay the stipulated measure of damages.

Appeal by plaintiff from a judgment of the district court for Murray county, where the action was tried by *Severance*, J., a jury being waived.

*H. C. Grass* and *Daniel Rohrer*, for appellant.

*B. H. Whitney* and *Lind & Hagberg*, for respondent.

MITCHELL, J.   By virtue of an execution and a writ of attachment against the property of one Joseph F. Bean, the plaintiff, as sheriff, levied upon certain personal property found in the actual possession and custody of defendant.   Soon afterwards, as the court finds, the defendant received the property from the plaintiff, and gave him therefor two receipts, both in words following:

"[Title of the action, etc.]   Execution [or attachment] issued [date] by said court against the goods and chattels of said defendant, for [amount.]   Under said execution, [or attachment,] Lorain Mason, sheriff," etc., "has levied upon the following goods and chattels of said defendant: [Description.]

"MARCH 24, 1884.

"Received of the said Lorain Mason the goods and chattels above mentioned, which I promise to deliver to him in said county at any time he shall demand the same; or, in default thereof, I do hereby agree with the said Lorain Mason to pay him the amount of the above-mentioned debt, as the same is above specified, together with all costs, fees, and interest on the same.

[Signed]                               "LEONARD ALDRICH."

The court finds that at the time of this levy the property belonged to John A. Swenson and Samuel Bean, and not to Joseph F. Bean; and that when defendant gave these receipts he informed plaintiff of that fact, and told him that the true owner would assert his rights. Shortly afterwards, "without his knowledge or consent, and without fault on his part," the property was taken from the possession of de-

fendant, and delivered into the possession of Samuel Bean, one of the real owners, who still retains the same. The plaintiff then demanded of defendant a delivery of the property, or payment of the amounts of the debts named in the writs, and, upon his refusal, brought this action.

The question is whether defendant is discharged from liability on his receipt by the fact that the property, when attached, did not belong to the debtor, but to a third person, into whose possession it has since gone. Much of the apparent conflict among the authorities upon the subject of the nature and extent of the liability of receiptors of property to officers, has arisen from a failure to discriminate between contracts which, although coming under the general denomination of "accountable receipts," are yet clearly distinguishable from each other. Whether a receiptor may be discharged from liability by proof that the property belonged, not to the debtor, but to a third person, into whose hands it has gone, is to be determined by ascertaining, from the terms of his contract as applied to the circumstances under which it was executed, whether it is a contract of indemnity, or an express assurance for a certain amount or value of attachable property, whereby he assumes an absolute liability, or a mere contract of bailment for the safe-keeping and return of specific chattels. If it be the former, the receiptor would not be allowed to prove title in a third person, because, for a valuable consideration, (the release of the attached property,) he had made an absolute agreement, either to deliver on demand certain property, which he agreed to be the debtor's, or, in default, to pay a stipulated sum. Upon an absolute undertaking like this the officer could rely, and refrain from searching for, or levying upon, other property for the security or satisfaction of the debt. Such a contract is much more than one of bailment. As cases falling under this general class, see *Easton* v. *Goodwin*, 22 Minn. 426, and *Bacon* v. *Daniels*, 116 Mass. 474.

But, on the other hand, if the contract be one merely and purely of bailment, then the receiptor may always excuse himself for non-delivery by showing that the goods were not the property of the debtor, but of a third person, into whose possession they have gone.

Story, Bailm. § 132; Freem. Ex'ns, § 265; Drake, Attachm. § 389; *Thayer* v. *Hunt*, 2 Allen, 449; *Burt* v. *Perkins*, 9 Gray, 317; *Lewis* v. *Webber*, 116 Mass. 450; *Barron* v. *Cobleigh*, 11 N. H. 557, (35 Am. Dec. 505;) *Stone* v. *Sleeper*, 59 N. H. 205; *Penobscot Boom Co.* v. *Wilkins*, 27 Me. 345; *The Idaho*, 93 U. S. 575; *Main* v. *Bell*, 27 Wis. 517; *Heath* v. *Keyes*, 35 Wis. 668; *Perry* v. *Williams*, 39 Wis. 339.

In the case at bar we think it clearly appears that the contract was merely one of bailment, for the safe-keeping and return of the property. Had the receipt consisted only of the first clause, there could be no possible doubt of this. The introductory memorandum was evidently intended merely for purposes of reference and identification, and not as a substantive part of defendant's contract, which is all contained in the receipt which follows.

The second clause of the receipt in no way changes the nature or legal effect of the instrument, except to fix the rule of damages, in case of *default* of defendant to perform his promise to return. It adds nothing to the extent of defendant's liability implied in the law of bailment, except to fix the measure of damages in case of a breach of contract. The "*default*" here meant is not the mere fact of the non-delivery of the goods, but a failure to deliver *amounting to a breach of the contract* of bailment. Hence any fact which would excuse the defendant from returning the property would exempt him from liability to pay the stipulated measure of damages, for in such case there would be no "*default.*" See *Sibley* v. *Story*, 8 Vt. 15; *Page* v. *Thrall*, 11 Vt. 230; *Holt* v. *Burbank*, 47 N. H. 164.

We might also say that the case does not present a single element of an equitable estoppel against the defendant. The receipt contains no agreement that the property belonged to the debtor, on the strength of which plaintiff might have acted. On the contrary, he was expressly informed that it did not. As he was under no legal obligation to keep one man's property to pay another man's debt, and as the property has, since it was bailed, gone into the possession of the rightful owner, it follows that plaintiff is not now accountable for it to any one, and therefore there is no good reason why he should be allowed to hold the receiptor accountable to him.

2. Appellant, however, contends that the property was attachable

as the property of Joseph F. Bean, at the time of the levy. He predicates this upon the fact that the court finds that Joseph F. Bean formerly owned an interest in the property, which he had sold to Samuel Bean, and, as appellant claims, has also found certain other facts which show that this transfer was fraudulent as to creditors. This is a mistake. The facts found by the court do not *necessarily* lead to any such result. The most that can be claimed for them is that certain *evidential* facts have been found which might tend to prove that the sale was fraudulent.

Judgment affirmed.